IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| JASON MEREDITH and SUSAN MEREDITH, | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO: 3:18-CV-00127-RGE-SBJ |
| | ) | |
| v. | ) | |
| | ) | |
| ETHICON, INC., JOHNSON & JOHNSON | ) | |
| and MEDTRONIC, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED AND SUBSTITUTED COMPLAINT

COME NOW Plaintiffs, Jason Meredith and Susan Meredith, by and through their

attorneys, William J. Bribriesco and Anthony J. Bribriesco, of the Bribriesco Law Firm,

P.L.L.C., and for their cause of action against Defendants Ethicon, Inc., Johnson & Johnson,

and Medtronic, Inc., state as follows:

### PARTIES AND JURISDICTION

1.    At all times material hereto, Plaintiff Jason Meredith (hereinafter "Plaintiff

Jason" or "Jason"), was a resident of Scott County, Iowa.

2.    At all times material hereto, Plaintiff Susan Meredith (hereinafter "Plaintiff

Susan" or "Susan"), was a resident of Scott County, Iowa.

3.    Johnson & Johnson is and, at all times relevant, was a corporation organized

and existing under the laws of the State of New Jersey with its principal place of business at

One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933, and regularly

conducted business in the State of Iowa by selling and distributing its products in Iowa.

4.    Ethicon, Inc., is a subsidiary of Johnson & Johnson, which has

its headquarters in Somerville, New Jersey.

5.      Ethicon, Inc., is a New Jersey corporation, which has its principal place of business located in Somerville, New Jersey.

6.      Ethicon, Inc., and Johnson & Johnson, have transacted and conducted business within the State of Iowa.

7.      Ethicon, Inc., and Johnson & Johnson, have derived substantial revenue from goods and products disseminated and used in the State of Iowa.

8.      Ethicon, Inc. and Johnson & Johnson, expected or should have expected their acts to have consequences within the State of Iowa and derived substantial revenue from interstate commerce.

9.      Medtronic, Inc. ("Medtronic") is a Minnesota Corporation headquartered in Minneapolis, Minnesota.

10.     Medtronic, Inc. has transacted and conducted business within the State of Iowa.

11.      Medtronic, Inc. has derived substantial revenue from goods and products disseminated and used in the State of Iowa.

12.      Medtronic, Inc. expected or should have expected its acts to have consequences within the State of Iowa and derived substantial revenue from interstate commerce.

13.     This is a lawsuit for personal injury and loss of consortium damages in excess of $75,000.00. There is complete diversity of citizenship between Plaintiff and all of the Defendants as the parties are citizens/entities of different states. Accordingly, subject

matter jurisdiction is proper in this Court pursuant to 28 U.S.C. 1332.  Further, this Court

has personal jurisdiction over the Defendants because they have done business in the State

of Iowa, have committed a tort in whole or in part in the State of Iowa, have substantial and

continuing contact with the State of Iowa, and derive substantial revenue from goods used

and consumed within the State of Iowa. Defendants Ethicon and Johnson & Johnson,

actively sell, market and promote their Proceed Mesh to physicians and consumers in this

state on a regular and consistent basis.  Defendant Medtronic, actively sells, markets and

promotes its Covidien PCO9X – Parietex Mesh to physicians and consumers in this state on

a regular and consistent basis.

14.     Defendants are subject to in personam in the U.S. District Court for the Southern

District of Iowa because they placed a defective product in the stream of commerce and that

product caused personal injuries to Plaintiff (who resides in Iowa) in Iowa.  Further, venue

is proper in this jurisdiction pursuant to 28 U.S.C. § 1391, because a substantial part of the

events or omissions giving rise to the claim occurred in this District, and because

Defendants conduct substantial business in this District.

## <u>COMMON ALLEGATIONS</u>

15.     Defendants Ethicon, Inc., and Johnson & Johnson, directly or through their

agents, apparent agents, servants or employees designed, manufactured, marketed,

advertised, distributed, promoted and sold Proceed Hernia Mesh, for the treatment of hernia

repairs.

16.     Defendant Medtronic Inc., directly or through their agents, apparent

agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted and sold Covidien PCO9X – Parietex Mesh, for the treatment of hernia repairs.

17.     On or about July 17, 2009, Plaintiff Jason Meredith underwent incisional ventral hernia repair performed by Uretz Oliphant, M.D. at the Carle Foundation Hospital in Urbana, Illinois, wherein the surgeon utilized Proceed Hernia Mesh, designed and manufactured by Defendants Ethicon, Inc. and Johnson & Johnson.

18.     On or about December 19, 2012, Plaintiff Jason Meredith underwent incisional ventral hernia repair performed by Andrew Phillips, M.D. and Jessica Smith, M.D. at the Veteran's Hospital in Iowa City, Iowa, wherein the surgeon utilized Covidien PCO9X – Parietex Mesh.  During this incisional ventral hernia repair, the Covidien PCO9X – Parietex Mesh utilized was placed over the Proceed Hernia Mesh.

19.     On or about September 27, 2016, Plaintiff Jason Meredith underwent surgical removal of the hernia mesh, namely, Covidien PCO9X – Parietex Mesh and Proceed Hernia Mesh, manufactured, marketed, and sold by Defendants Ethicon, Inc., Johnson & Johnson and Medtronic, Inc.  Said revision surgery occurred at Trinity Medical Center-Bettendorf, located in Bettendorf, Iowa.

20.     Due to defective design, defective manufacturing, inadequate warning, breach of express warranties, and negligence by Defendants, the Product has caused Plaintiff abdominal adhesions, bowel obstruction, abdominal pain and swelling, physical discomfort, mental anguish, and limitations on activities of daily living, including loss of enjoyment of life.     Additionally, Plaintiff underwent a subsequent revision surgery to

remove and/or repair the damage and injuries caused by the Proceed mesh and Covidien PCO9X – Parietex Mesh.

21.    Ethicon and Johnson & Johnson's Proceed Mesh, and Medtronic's Covidien PCO9X – Parietex Mesh have numerous defects that create a high risk of unreasonable and dangerous injuries and side effects with severe permanent adverse health consequences including that the material in the Product abrades tissues adversely affecting patient health and regularly fail to perform the purpose of its implantation such that the patient requires repair and/or removal of the Product and repeated treatment and surgery.

22.    In particular, Defendants Ethicon, Inc., Johnson & Johnson and Medtronic added a layer to the Proceed Hernia mesh and Covidien PCO9X – Parietex Mesh in an attempt to lessen the injuries caused by the polypropylene. However, the protective layer on the Proceed Hernia Mesh and Covidien PCO9X – Parietex Mesh was completely ineffective as over time the layer disintegrated, and only bare polypropylene remained.

23.    At all times material hereto, Defendants, by and through their agents, servants and employees, negligently, recklessly and carelessly marketed, distributed and sold the Products at issue herein without adequate instructions or warning of its serious side effects and unreasonably dangerous risks.

24.    Defendants, through their affirmative misrepresentations and/or omissions, actively concealed from Jason Meredith and from Jason Meredith's treating/implanting physicians the true and significant risks associated with Defendants' Mesh Products at issue.

25.    Prior to the time that the Mesh Products were implanted in Plaintiff Jason, Defendants were aware of numerous defects in the Mesh Products. Despite being aware of the numerous defects and unreasonable risks in the Mesh Products, Defendants designed, manufactured, marketed, and distributed the Mesh Products with the intent they would be implanted in patients. Defendants were aware or should have been aware that implanting the Mesh Products in patients was likely to cause injury and harm to the patients into whom the Mesh Products were implanted. Alternatively, Defendants failed to exercise reasonable care in determining the risks and potential adverse consequences of implanting the Mesh Products into patients.

26.    Defendants made public statements in the form of written product descriptions, product labels, promotional materials and other materials that asserted that implanting the Mesh Products in patients was safe and would not cause harm to patients. These statements were made with the intent that medical professionals, potential patients (including plaintiff) and members of the public would rely upon them, with the intent that potential patients and members of the public would pay for the Mesh Products and that the Mesh Products would be implanted in patients. When Defendants made these statements, Defendants knew or should have known that the statements were inaccurate.

27.    Representatives of Defendants also made statements to numerous individuals, including medical professionals, that implanting the Mesh Products in patients was safe and would not cause harm to patients. When Defendants' representatives made these statements, Defendants knew that the statements were

inaccurate.  Alternatively, when Defendants' representatives made these statements,

Defendants should have known the statements were inaccurate.

28.    The Defendants owed Jason Meredith, and other consumers a duty to

exercise reasonable care when designing, manufacturing, marketing, advertising,

distributing, and selling the Product, including the duty to take all reasonable steps

necessary to ensure the Product was not unreasonably dangerous to its consumers

and users, and to warn Jason's treating/implanting physicians, other consumers, and

the medical community of the dangers associated with the Mesh Products at issue.

29.    At all times material hereto, Defendants had actual knowledge, or in

the alternative, should have known through the exercise of reasonable and prudent

care, of the hazards and dangers of the Mesh Products at issue.

30.    Defendants had a duty to disclose to potential consumers, potential

patients, and to health care professionals the causal relationship or association of the

Mesh Products to the development of the types of injuries sustained by Plaintiff

herein.

31.    Defendants' duty of care owed to consumers, health care professionals,

and patients included providing accurate information concerning: (1) the clinical

safety and effectiveness profiles of the Mesh Products at issue, and (2) appropriate,

complete, and accurate warnings concerning the adverse effects of the Mesh

Products at issue, including the injuries suffered by Plaintiff herein.

32.    During the time that Defendants designed, manufactured, packaged,

labeled, promoted, distributed, and/or sold the Mesh Products at issue, Defendants

knew, or in the exercise of reasonable care should have known, that the Mesh

Products were defective, dangerous, and otherwise harmful to potential consumers and/or patients, including Plaintiff.

33.    Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, marketing, supplying, promotion, advertisement, packaging, sale, testing, quality assurance, quality control, sale, and distribution of the Mesh Products at issue in interstate commerce, in that Defendants knew and had reason to know that use of the Mesh Products at issue created a significant risk of suffering unreasonably dangerous health related side effects, including the types of injuries suffered by Plaintiff Jason herein, and failed to prevent or adequately warn of the severity of these risks and injuries.

34.    Defendants were further negligent in that they manufactured and produced the defective Mesh Products - aware of the defects inherent in the Mesh Products, failed to act in a reasonably prudent manner in designing, testing, and marketing the Mesh Products, and failed to provide adequate warnings of the Mesh Products' defects and risks.

35.    The Defendants' failed to exercise due care under the circumstances, and their negligence includes the following acts and omissions:

        a. failing to properly and thoroughly test the Mesh Products before releasing them to market;

        b. failing to properly and thoroughly analyze the data resulting from the pre-marketing tests of the Mesh Products;

        c. failing to conduct sufficient post market testing and surveillance of the Mesh Products;

d. designing, manufacturing, marketing, advertising, distributing, and selling the Mesh Products to consumers and/or patients, including Jason Meredith, without an adequate warning of the significant and dangerous risks of the Mesh Products and without proper instructions to avoid foreseeable harm;

e. failing to accompany their Mesh Products with proper or adequate warnings or labeling regarding adverse side effects and health risks associated with the use of the mesh Products and the comparative severity of such adverse effects;

f. failing to provide warnings, instructions or other information that accurately reflected the symptoms, scope, and severity of the side effects and health risks of the Mesh Products including but not limited to the fact that the material in the mesh abrades tissues adversely affecting patient health and regularly fail to perform the purpose of its implantation such that the patient requires repair and/or removal of the Mesh Products and repeated treatment and surgery;

g. failing to exercise due care when advertising and promoting the Mesh Products; and

h.  negligently continuing to manufacture, market, advertise, and distribute the Mesh Products after the Defendants knew or should have known of its adverse effects.

36.    Defendants' negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff suffered, and will continue to suffer, as described herein.

37.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Plaintiff Jason has suffered and will continue to suffer serious injuries as described herein.

38.    Defendants knew and/or should have known that it was foreseeable that consumers such as Plaintiff would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution and sale of the Products.

39.     Before Plaintiff suffered the injuries complained of herein, Defendants were on notice of numerous bodily injuries caused by the mesh, and based thereon, Defendants knew or should have known that the Mesh Products caused an unreasonably high rate of infection, extrusion, perforation, chronic pain and/or abscess in people implanted with the Product.

40.     Even through Defendants had known or should have known that the Mesh Products created a foreseeable, unreasonable risk of harm to those patients into whom they were implanted, Defendants continued to market the Product in the United States. Defendants have sold thousands of Mesh Products in the United States.

41.     Defendants have never provided adequate warning or information to physicians who implanted the Mesh Products, to patients, or to people who may be implanted with the device, of the risks that the Mesh Products causes an unreasonably high rate of infection, extrusion, perforation, chronic pain and/or abscess.

42.     The Defendants' Mesh Products used by and implanted in Jason was provided to him and his doctor in a condition substantially the same as the condition in which it was manufactured and sold.

43.     Jason and Jason's treating/implanting physicians relied on claims made by Defendants that the Mesh Products were safe and effective for their intended purpose.

44.     The development of Plaintiff's injuries at issue herein were preventable and resulted directly from Defendants' failure and refusal to conduct

proper safety studies, failure to properly assess and publicize alarming safety

signals, suppression of information revealing serious and life- threatening risks,

willful and wanton failure to provide adequate warnings and/or instructions, and

willful misrepresentations concerning the nature and safety of their Mesh Products

at issue. This conduct and the mesh product defects complained of herein were

substantial factors in bringing about and exacerbating Jason's injuries.

45.     Jason's injuries and/or his resulting damages were a reasonably

foreseeable consequence of Defendants' conduct and the defects of their Mesh

Products at issue herein.


46.     Jason would not have used Proceed Hernia Mesh and Covidien

PCO9X – Parietex Mesh at issue herein and Jason's treating/implanting physicians

would not have implanted and/or used the Mesh Products at issue herein had

Defendants properly disclosed and/or warned about the risks associated with the

Mesh Products and/or had Defendants conformed the Mesh Products to their

express warranties. Thus, had Defendants properly disclosed the risks associated

with the Mesh Products at issue, Jason would have avoided the risk of developing

the injuries complained of herein.

47.     As a result of Defendants' actions, Jason and his treating/implanting

physicians were unaware, and could not reasonably have known or learned through

reasonable diligence, that Jason would be and/or had been exposed to the risks

identified herein, and that those risks were the direct and proximate result of

Defendants' acts, negligence, omissions, and/or misrepresentations.

48.     Had Defendants provided the proper warnings to Jason and his treating/implanting physicians, Jason's treating/prescribing physicians would not have used, prescribed or implanted the Products at issue, and Jason would not have been injured.  Moreover, had Defendants provided the proper warnings to Jason and his treating/implanting physicians, Jason would not have sustained the injuries at issue herein.

49.     As a direct and proximate result of Defendants' negligence, wrongful conduct, as well as the improper warnings and unreasonably dangerous and defective characteristics of the Mesh Products, Plaintiff Jason suffered injuries and damages as follows:

        a.  Past medical expenses;

        b.  Past physical pain and mental suffering;

        c.  Past loss of full body;

        d.  Past lost wages;

        e.  Future medical expenses;

        f.  Future physical pain and mental suffering;

        g.  Future loss of full body; and

        h.  Future loss of earning capacity.

50.     As a result of Plaintiff Jason Meredith's injuries and damages, Plaintiff Susan Meredith has been deprived of the companionship, comfort, guidance, affection and aid, general usefulness, industry and attention within the family due to the injuries her husband sustained.

## FRAUDULENT CONCEALMENT

51.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

52.     Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of the facts as alleged herein by Defendants.  Plaintiff Jason has been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on his part.

53.     Plaintiff Jason or his physicians could not reasonably have discovered the injury and its cause before the date of the revision surgery on September 27, 2016.

54.     Defendants were under a continuing duty to disclose the true character, quality and nature of the Mesh products and components identified herein, to Jason as well as his physicians. Because of their concealment of the true character, quality and nature of the Mesh products to Jason, Defendants are estopped from relying on any statute of limitations.

55.      As a result of Defendants' unlawful and fraudulent concealment of the effects of the Mesh products, the running statute of limitations has been suspended with respect to claims that Plaintiff Jason could bring. Plaintiff Jason had no knowledge of Defendants' unlawful conduct, or any of the facts that might have led to the discovery of Defendants' wrongdoing, until shortly before the Petition was filed in the Iowa District Court for Scott County, now removed to this Court.

## CAUSES OF ACTION

## COUNT I - STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
## – ALL DEFENDANTS

56.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

57.    The Mesh Products are defective in their design or formulation in that they are   not reasonably fit, suitable, or safe for their intended purpose and/or their foreseeable risks exceed the benefits associated with their design and formulation.

58.    At all times material to this action, the Proceed Hernia Mesh and Covidien PCO9X – Parietex Mesh,  (hereinafter collectively referred to as the "Mesh Products") were expected to reach, and did reach, consumers in the State of Iowa and throughout the United States, including Jason Meredith, without substantial change in the condition in which they were  sold.

59.    Defendants had a duty to individuals, including Plaintiff, to use reasonable care in the preparation of the Mesh Products for use in repairing inguinal hernias.

60.    The Mesh Products have numerous defects that create a high risk of unreasonable and dangerous injuries and side effects with severe permanent adverse health consequences including that the material in the mesh abrades tissues adversely affecting patient health and regularly fail to perform the purpose of its implantation such as the patient requires repair and/or removal of the mesh and repeated treatment and surgery.

61.    In particular, Defendants Ethicon, Inc. and Johnson & Johnson added a layer to the Proceed Hernia mesh in an attempt to lessen the injuries caused by the polypropylene. However, the protective layer on the Proceed Hernia Mesh was completely

ineffective as over time the layer disintegrated, and only bare polypropylene remained. This situation occurred to Plaintiff Jason Meredith and was a cause of his injuries.

62.    In particular, Defendant Medtronic, Inc. defectively designed the Covidien PCO9X – Parietex Mesh as the polyester had tissue attachment properties that caused injuries to the Plaintiff. A feasible safer alternative design could have included new collagen film formulation and changes to the knitting pattern so that the hydrophilic film extended over the sides would have minimized tissue attachment to the mesh in case of direct contact with the viscera. This situation occurred to Plaintiff Jason Meredith and was a cause of his injuries.

63.    At all times material to this action, the Mesh Products were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time they were placed in the stream of commerce in ways which include, but are not limited to, one or more of the following:

      a. When placed in the stream of commerce, the Mesh Products contained unreasonably dangerous design defects and were not reasonably safe as intended to be used, subjecting Jason Meredith to risks that exceeded the benefits of the subject product, including, but not limited to, permanent personal injuries and adverse side effects as outlined herein;

      b. When placed in the stream of commerce, the Mesh Products were defective in design and formulation, making the use of the Mesh Products more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other similar products on the market;

      c. The design defects of the Mesh Products existed before they left the control of Defendants;

      d. The Mesh Products were insufficiently and inadequately tested;

      e. The Mesh Products caused harmful side effects that outweighed any

potential utility; and

f. The Mesh Products were not accompanied by adequate instructions and/or warnings to fully apprise users, consumers, physicians and/or implanters, including Jason Meredith and Jason's treating/implanting physicians, of the full nature and extent of the risks and side effects associated with their use, thereby rendering Defendants liable to Plaintiff.

64.    Defendants were negligent in designing and/or preparing the Mesh Products for use in repairing inguinal and/or umbilical hernias. The Mesh Products were designed and manufactured improperly. The Defendants have breached their duty to design and manufacture the Mesh Products line without any defects.

65.    In addition, at the time the subject Mesh Products left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Jason Meredith's injuries without impairing the reasonably anticipated or intended function of the Mesh Products. These safer alternative designs were economically and technologically feasible and would have prevented Jason Meredith's injuries without substantially impairing the Mesh Products' utility.

66.    As a direct and proximate result of the Defendants' defective design of their Mesh Products, Plaintiff Jason Meredith suffered and will continue to suffer injuries and damages as follows:

a.  Past medical expenses;

b.  Past physical pain and mental suffering;

c.  Past loss of full body;

d.  Past lost wages;

e.  Future medical expenses;

f.  Future physical pain and mental suffering;

g. Future loss of full Body; and

h. Future loss of earning capacity.

67.     Defendants acted recklessly, willfully, and wantonly and with significant indifference to, and conscious disregard for the safety of others, including Plaintiff, through their negligent design and manufacture of the Mesh Products, a dangerous and defective product. Defendant's reckless disregard for Plaintiff's safety through their defective design and manufacture of the Mesh Products warrants the imposition of punitive damages.

WHEREFORE, Plaintiff Jason Meredith seeks compensatory and punitive damages against Defendants, along with interest and costs as provided by law, and for any just and equitable relief appropriate under the premises.

## COUNT II - STRICT PRODUCTS LIABILITY (INADEQUATE WARNING – ALL DEFENDANTS

68.     Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

69.     The Mesh Products at issue were defective and unreasonably dangerous when they  left the possession of Defendants in that they  contained warnings insufficient to alert consumers, users and physicians/prescribers, including Jason Meredith and Jason's treating/prescribing physicians, of the dangerous risks and reactions associated with the Mesh Products, including but not limited to their  propensity to cause permanent and/or severe injuries, notwithstanding Defendants' knowledge of an increased risk of these injuries and side effects over other forms of treatment. Thus, the subject Mesh Products, Proceed Hernia Mesh and Covidien PCO9X – Parietex Mesh, were unreasonably dangerous because an adequate warning was not provided.

70.     The Mesh Products developed, manufactured, marketed, distributed and/or supplied by Defendants were defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of serious bodily harm from the use of the Mesh Products, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the defects of the Mesh Products, and/or alternatively failed to conform to federal and/or state requirements for labeling, warnings and instructions, or recall, while knowing that the Mesh Products could cause serious injury.

71.     Jason Meredith was prescribed, implanted with and/or used the Mesh Products for its intended purpose, and neither he nor his treating/implanting physicians could have discovered the relevant defects in the subject product through the exercise of reasonable care.

72.     Defendants, as manufacturers and/or distributors of the subject Mesh Products, are held to the level of knowledge of an expert in the field.

73.     Defendants had a continuing duty to warn users (including Jason Meredith) and physicians/prescribers (including Jason's treating/implanting physicians) of the known dangers associated with the subject mesh products, including but not limited to the serious and permanent injuries outlined herein.

74.     Plaintiff, Jason Meredith, individually and through his treating/implanting physicians, reasonably relied upon the skill, superior knowledge, and judgment of Defendants, particularly as same related to the warnings regarding Defendants' Mesh Products at issue herein.

75.     The warnings that were given by Defendants regarding the Mesh Products at issue were not accurate, clear, and/or were ambiguous.  The warnings that were given by Defendants failed to properly warn users (including Jason Meredith) and physicians/implanters (including Jason's treating/implanting physicians) of the increased risks of permanent physical injuries as outlined herein.

76.     Defendants failed to adequately warn consumers of the dangers associated with the Mesh Products and said failure caused Plaintiff's injury. If Defendants had issued a proper warning to consumers, Plaintiff would not have had the Mesh Products implanted, Plaintiff's treating/implanting physicians would not have allowed the Mesh Products to be used or implanted into Plaintiff Jason, and Jason's injuries would have been avoided.

77.     The Mesh Products have numerous defects that create a high risk of unreasonable and dangerous injuries and side effects with severe permanent adverse health and consequences including that the material in the Mesh Products abrade tissues adversely affecting patient health and regularly fail to perform the purpose of their  implantation such that the patient requires repair and/or removal of the Mesh Products and repeated treatment and surgery.

78.     In particular, Defendants Ethicon, Inc., Johnson & Johnson and Medtronic added a layer to the Proceed Hernia mesh in an attempt to lessen the injuries caused by the polypropylene. However, the protective layer on the Proceed Hernia Mesh was completely ineffective as over time the layer disintegrated, and only bare polypropylene remained. Defendants Ethicon, Inc. and Johnson & Johnson provided no adequate warning to Plaintiff Jason Meredith that this situation was foreseeable, and could cause injury, which in fact did occur to Plaintiff.

79.    In particular, Defendant Medtronic defectively designed the Covidien PCO9X – Parietex Mesh as the polyester had tissue attachment properties that caused injuries to the Plaintiff.  A feasible safer alternative design could have included new collagen film formulation and changes to the knitting pattern so that the hydrophilic film extended over the sides would have minimized tissue attachment to the mesh in case of direct contact with the viscera. Defendant Medtronic, Inc., provided no adequate warning to Plaintiff Jason Meredith that this situation was foreseeable, and could cause injury, which in fact did occur to Plaintiff.

80.    The warnings provided to Plaintiff's healthcare providers in their capacities as learned intermediaries were improper because they did not reflect the full extent of the potential health complications associated with using the Mesh Products.  Had Defendants adequately warned Plaintiff's healthcare providers of the risks associated with the Mesh Products, the healthcare providers, acting as reasonably prudent healthcare providers, would have elected not to use the Mesh Products to repair Plaintiff Jason's incisional hernia.

81.    As a direct and proximate result of the Defendants' inadequate warnings and/or negligent failure to warn, Plaintiff suffered and will continue to suffer injuries and damages as follows:

    a.  Past medical expenses;

    b.  Past physical pain and mental suffering;

    c.  Past loss of full body;

    d.  Past lost wages;

    e.  Future medical expenses;

    f.  Future physical pain and mental suffering;

g.  Future loss of full Body; and

h.  Future loss of earning capacity.

82.     Defendants acted recklessly, willfully, wantonly and with a significant indifference to, and conscious disregard for the safety of others, including Plaintiff, through their negligent failure to adequately warn Plaintiff to the dangerous and defective nature of the Mesh Products. Defendants' reckless disregard for Plaintiff's safety through their inadequate warnings and/or negligent failure to adequately warn him of the dangerous and defective nature of the Mesh Products warrants the imposition of punitive damages.

WHEREFORE, Plaintiff Jason Meredith seeks compensatory and punitive damages against Defendants, along with interest and costs as provided by law, and for any just and equitable relief appropriate under the premises.

## COUNT III - STRICT PRODUCTS LIABILITY (MANUFACTURING DEFECT) – ALL DEFENDANTS

83.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs.

84.     At all relevant times, Defendants designed, manufactured, tested, packaged, labeled, promoted, distributed and sold the Mesh Products and Plaintiff was recipient of their mesh products, namely, Proceed Hernia mesh and Covidien PCO9X – Parietex Mesh.

85.     The Mesh Products were expected to and did reach the usual consumers, handlers, and persons coming into contact with the Mesh Products without substantial change in the condition in which were produced, manufactured, sold, and distributed by the Defendants.

86.     At those times, the Mesh Products were in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

Plaintiff contends that the defective condition of the Mesh Products and the lack of ordinary care in manufacturing the Mesh Products are obvious and within the range of comprehension of the average juror without speculation.

87.     The Mesh Products manufactured, sold, and distributed by the Defendants were defective in manufacture in that, when they left the hands of the manufacturer and/or suppliers, the foreseeable risk exceeded the benefits associated with the use of the Mesh Products.  The Mesh Products implanted into Plaintiff were being used in a manner reasonably anticipated at the time they were implanted in him.

88.     At all times material to this action, the Mesh Products implanted into Plaintiff were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition (which presented and constituted an unreasonable risk of danger and injury to Plaintiff) at the time they were placed in the stream of commerce in ways which include, but were not limited to, one or more of the following:

a. The Mesh Products' manufacturing defects occurred while the product was in the possession and control of Defendants, the Mesh Products were sold in a defective condition by manufacture, and contained manufacturing defects which rendered the Mesh Products unreasonably dangerous;

b. The Mesh Products as manufactured were unsafe for Plaintiff;

c. The Mesh Products as manufactured was unreasonably dangerous to Plaintiff;

d. The Mesh Products did not perform safely as an ordinary consumer/patient, like Plaintiff, would expect;

e. The Mesh Products as manufactured were unsafe for their intended use;

f. Defendants knew the component parts of the Mesh Products as implemented through manufacture could cause injury to the end user;

g. The Mesh Products were not made in accordance with Defendants' specifications or performance standards; and

h. The Mesh Products' manufacturing defects existed before they left the control of Defendants.

89.     The Mesh Products manufactured and/or supplied by Defendants were defective in construction or composition in that, when they left Defendants' hands, they deviated in a material way from Defendants' manufacturing performance standards and/or they differed from otherwise identical products manufactured to the same design formula. In particular, the products are not safe, have numerous and serious side effects as outlined herein -– which Jason Meredith suffered and suffers from herein.  The Mesh Products were unreasonably dangerous in construction or composition.

90.     The defects in the Mesh Products were substantial factors in causing Plaintiff's injuries.

91.     In particular, Defendants Ethicon, Inc. and Johnson & Johnson manufactured their mesh by adding a layer to the Proceed Hernia mesh in an attempt to lessen the injuries caused by the polypropylene. However, the protective layer on the Proceed Hernia Mesh was completely ineffective as over time the layer disintegrated, and only bare polypropylene remained.  Defendants Ethicon, Inc. and Johnson & Johnson provided no adequate warning to Plaintiff Jason Meredith that this situation was foreseeable, and could cause injury, which in fact did occur to Plaintiff.

92.     In particular, Defendant Medtronic defectively manufactured the Covidien PCO9X – Parietex Mesh as the polyester had tissue attachment properties that caused injuries to the Plaintiff.  A feasible safer alternative design could have included new collagen film formulation and changes to the knitting pattern so that the hydrophilic film

extended over the sides would have minimized tissue attachment to the mesh in case of direct contact with the viscera. Defendant Medtronic, Inc., provided no adequate warning to Plaintiff Jason Meredith that this situation was foreseeable, and could cause injury, which in fact did occur to Plaintiff.

93.    As a direct and proximate result of manufacturing defects in Defendants' Mesh Products, Plaintiff suffered and will continue to suffer injuries and damages as follows:

a.  Past medical expenses;

b.  Past physical pain and mental suffering;

c.  Past loss of full body;

d.  Past lost wages;

e.  Future medical expenses;

f.  Future physical pain and mental suffering;

g.  Future loss of full Body; and

h.  Future loss of earning capacity.

94.    Defendants acted recklessly, willfully, wantonly and with a significant indifference to, and conscious disregard for the safety of others, including Plaintiff, by manufacturing and selling the dangerous and defective Mesh Products to Plaintiff. Defendants' reckless disregard for Plaintiff's safety by deliberately exposing him to the dangerous and defective Mesh Products warrant the imposition of punitive damages.

WHEREFORE, Plaintiff Jason Meredith seeks compensatory and punitive damages against Defendants, along with interest and costs as provided by law, and for any just and equitable relief appropriate under the premises.

## COUNT IV - STRICT PRODUCTS LIABILITY (BREACH OF EXPRESS WARRANTY) – ALL DEFENDANTS

95.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs.

96.    Defendants expressly represented to Jason Meredith, Jason's treating/implanting physicians, other consumers, and the medical community that the Mesh Products were safe and fit for their intended purposes, was of merchantable quality, had been adequately tested, and did not produce dangerous side effects which they actually do produce (e.g., the mesh abrades tissues adversely affecting patient health and regularly fails to perform the purpose of its implantation such that the patient requires repair and/or removal of the Mesh Products and repeated treatment and surgery).

97.    In particular, Defendants Ethicon, Inc., Johnson & Johnson designed and manufactured their mesh by adding alayer to the Proceed Hernia mesh in an attempt to lessen the injuries caused by the polypropylene. However, the protective layer on the Proceed Hernia Mesh was completely ineffective as over time the layer disintegrated, and only bare polypropylene remained.  Defendants Ethicon, Inc. and Johnson & Johnson provided no adequate warning to Plaintiff Jason Meredith that this situation was foreseeable, and could cause injury, which in fact did occur to Plaintiff.

98.    In particular, Defendant, Medtronic, Inc., defectively designed and manufactured the Covidien PCO9X – Parietex Mesh as the polyester had tissue attachment properties that caused injuries to the Plaintiff.  A feasible safer alternative design could have included new collagen film formulation and changes to the knitting pattern so that the hydrophilic film extended over the sides would have minimized tissue attachment to the

mesh in case of direct contact with the viscera. Defendant Medtronic, Inc., provided no adequate warning to Plaintiff Jason Meredith that this situation was foreseeable, and could cause injury, which in fact did occur to Plaintiff.

99.    The Mesh Products at issue do not conform to their /Defendants' express representations because they are not safe, have numerous and serious side effects, and cause severe and permanent injuries, including, but not limited to: the Mesh Products abrade tissues adversely affecting patient health and regularly fail to perform the purpose of their implantation such that the patient requires repair and/or removal of the Mesh Products and repeated treatment and surgery, as well as other serious injuries and side effects. In this case, Plaintiff Jason Meredith, was required to undergo a revision surgery due to the defective mesh of Defendants.

100.    At the time of the making of the express warranties regarding the Mesh Products, Defendants knew, or in the exercise of reasonable care should have known, of the purpose for which the Mesh Products were to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The subject Mesh Products were unreasonably dangerous because they failed to conform to an express warranty of Defendants.

101.    At the time of the making of the express warranties regarding the Mesh Products, Defendants knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that the Mesh Products were not safe and fit for their  intended use and, in fact, produces serious injuries to the user.

102.    At all relevant times the Products did not perform as safely as an ordinary consumer (including Plaintiff and Jason's treating physicians) would expect, when used as intended or in a reasonably foreseeable manner.

103.    Jason Meredith, Jason's treating/implanting physicians, other consumers, and the medical community relied upon the Mesh Products'/Defendants' express warranties and/or representations.  Jason Meredith purchased and/or allowed the Mesh Products to be used/implanted as a result of their /Defendants' express warranties and/or representations, and Jason's treating/implanting physicians used, prescribed and/or implanted the Mesh Products (relative to Plaintiff Jason) as a result of its/Defendants' express warranties and/or representations. Moreover, because the Mesh Products did not conform to their /Defendants' express warranties and/or representations, Jason sustained significant injuries and damages as outlined herein.

104.    As a direct and proximate result of the Defendants' breach of express warranty relative to the Mesh Products, Plaintiff Jason suffered and will continue to suffer injuries and damages as follows:

  a.  Past medical expenses;

  b.  Past physical pain and mental suffering;

  c.  Past loss of full body;

  d.  Past lost wages;

  e.  Future medical expenses;

  f.  Future physical pain and mental suffering;

  g.  Future loss of full Body; and

  h.  Future loss of earning capacity.

105.   Defendants acted recklessly, willfully, wantonly and with a significant indifference to, and conscious disregard for the safety of others, including Plaintiff, by manufacturing and selling the dangerous and defective Mesh Products to Plaintiff. Defendants' reckless disregard for Plaintiff's safety by deliberately exposing him to the dangerous and defective Mesh Products warrant the imposition of punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for all possible damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands that the issues contained herein be tried by a jury.

## COUNT V – PLAINTIFF SUSAN MEREDITH – LOSS OF CONSORTIUM CLAIM

106.   Plaintiff Susan Meredith repleads paragraphs 1 through 99 as though fully and completely set forth herein.

107.   At all times relevant to this lawsuit, Susan has been married to Jason.

108.   As a proximate cause of the negligence of the Defendants, which negligence was the cause of the injuries sustained by Jason, Plaintiff Susan, as wife of Jason, has sustained the following damages:

A.   SUSAN has been deprived of the companionship, comfort, guidance, affection and aid, general usefulness, industry and attention within the family due to the injuries her husband sustained.

WHEREFORE, Plaintiff Susan Meredith, requests judgment against Defendants representing compensatory damages, pre-judgment interest, and costs of this action.

By:     /s/ William J. Bribriesco
             William J. Bribriesco  AT001089
             Anthony J. Bribriesco
             BRIBRIESCO LAW FIRM, PLLC
             2407 18th Street, Suite 200
             Bettendorf, IA 52722
             Phone: 563/359-8266
             Fax: 563/359-5010
             Email:  bill@Bribriescolawfirm.com
             Email:  anthony@bribriescolawfirm.com
             **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was served upon counsel through the Court's CM/ECF electronic filing system on the 11th day of July 2019.

                         ___/s/ William J. Bribriesco_____